John H. Briggs v. Commissioner.
Briggs v. Commissioner
Docket No. 1010.
United States Tax Court
1944 Tax Ct. Memo LEXIS 312; 3 T.C.M. (CCH) 296; T.C.M. (RIA) 44100; March 29, 1944
*312 I. W. Sharp, Esq., 630 Bulkley Bldg., Cleveland, O., for the petitioner. Lawrence R. Bloomenthal, Esq., for the respondent. LEECH
Memorandum Opinion LEECH, Judge: The respondent has determined a gift tax deficiency of $390 for the calendar year 1939. The issues are (1) whether, in computing the petitioner's gift tax liability for 1939, the respondent properly disallowed exclusions of $4,000 each, claimed by the petitioner for gifts made in 1939 to each of petitioner's minor children; and (2) whether, in determining net prior gifts, the respondent properly disallowed certain exclusions claimed against gifts made in 1937 and 1938 to each of petitioner's two minor children. The parties have filed a stipulation of facts with exhibits, which we incorporate by reference in our findings of fact. [The Facts] The petitioner is an individual residing at Willoughby, Ohio. A gift tax return for the calendar year 1939 was filed by the petitioner with the collector of internal revenue for the eighteenth district of Ohio at Cleveland, Ohio. The petitioner is the father of Jean Hamilton Briggs, born August 30, 1932, and John H. Briggs, Jr., born June 7, 1935. On September 25, 1937, the *313 petitioner made a gift of 200 shares of the capital stock of Phelps Dodge Corporation to each of such minor children. These gifts were evidenced by letters, dated September 25, 1937, addressed to each child, and were identical except as to the stock certificate numbers. The letter to the daughter reads as follows: "Miss Jean Hamilton Briggs 388 Chiltern Drive Lake Forest, Illinois
"My dear daughter: This letter is to evidence the fact that I have today given you two hundred shares of Phelps Dodge Corp. common stock, represented by certificates # 81983 and # 81984, dated 28 August 1936. With love, (S) John H. Briggs "JHB/FJH WITNESS: (s) Mae Quinlan" On December 9, 1938, the petitioner made a cash gift in the amount of $14,000 to this daughter and $11,400 to his son. These gifts were evidenced by separate letters, under date of December 9, 1938, addressed to each child and were identical in all respects except as to the amount. The letter to the daughter reads as follows: "Miss Jean Hamilton Briggs 70 Scott Street Chicago, Illinois
"My dear Jean, I am depositing to your Cleveland Trust Co. checking account today, $14,000.00, which is an outright gift to you. Affectionately, *314 your father, (s) John H. Briggs" JHB/Q These gifts were reported by the petitioner in his gift tax returns filed for the respective years 1937 and 1938 as gifts to his son and daughter. On January 12, 1939, the petitioner made a cash gift of $4,000 to each of these children. These gifts were also evidenced by letters addressed to each child under date of January 12, 1939 and were identical to the letters of December 9, 1938, above quoted. These last mentioned gifts were not reported by the petitioner in his gift tax return for the calendar year 1939, since he regarded them as property excludable. Prior to the making of the aforementioned gifts by the petitioner, Charles E. Briggs, father of the petitioner, on December 30, 1935, made a gift of 600 shares of the capital stock of Phelps Dodge Corporation and 1,000 shares of the capital stock of Eaton Manufacturing Company to petitioner's daughter, Jean Hamilton Briggs; and to petitioner's son, John Hamilton Briggs, Jr., he gave 600 shares of the capital stock of Phelps Dodge Corporation and 1,100 shares of the capital stock of Eaton Manufacturing Company. The gift was evidenced by a letter addressed to the petitioner, under date of *315 December 30, 1935, which reads, in part, as follows: "My Dear John: I am making gifts to you; your wife, Mary Shepley Briggs; your daughter, Jean Hamilton Briggs; and your son, John Hamilton Briggs, Jr.; as follows: "1. * * * "2. * * * "3. Jean Hamilton Briggs, Phelps Dodge Corporation, 600 shares, certificate numbers, B 1215 and 30976, both in the name of E. A. Pierce & Co. Eaton Manufacturing Co., 1000 shares, certificate numbers NY 36185, NY 36026, NY 36205, NY 37253, NY 39865, NY 44310, NY 45288, NY 45611, NY 45827, NY 46280, all in the name of E. A. Pierce Co. "4. John Hamilton Briggs, Jr., Phelps Dodge Corporation, 600 shares, certificate numbers B 1214 and 30977, both in the name of E. A. Pierce & Co. Eaton Manufacturing Co., 1100 shares, certificate numbers NY 46286, NY 46299, NY 46527, NY 46746, all in the name of E. A. Pierce & Co.; also NY 46445 in the name of Herzfeld & Stern; also NY 47041 in the name of Field Glore & Co.; also NY 45879 in the name of King & Co.; also CL 8225, CL 8708, CL 8749, and CL 8750, all in the name of E. A. Pierce & Co. "All of these certificates are properly endorsed and negotiable. "While you are perfectly free to use these securities *316 as you wish, I strongly urge you, your family, and your brother and sisters to handle your financial affairs as a unit, giving each of you the advantage incident to a larger aggregate capital over smaller divided amounts. I would suggest that you decide in the near future on some method to obtain this advantage. "Will you kindly sign the receipt endorsed in the counterpart of this letter and return to me. "Affectionately, your father, "(s) C. E. Briggs. "I acknowledge receipt of the foregoing securities. "(s) John H. Briggs On December 23, 1936, Charles E. Briggs made a further gift of 100 shares of the capital stock of Phelps Dodge Corporation to each of the petitioner's two minor children. These gifts were evidenced by a letter addressed to the petitioner under date of December 23, 1936, which reads as follows: "My dear John: "I am making a gift to your daughter Jean Hamilton Briggs and to your son John Hamilton Briggs, Jr., through you as their natural guardian of one hundred shares of Phelps Dodge Corporation each. Therefore, I am handing you herewith the following securities: "1. Jean Hamilton Briggs. Phelps Dodge Corp. 100 shares, certificate 39786, in the name of Harriman *317 & Co. "2. John Hamilton Briggs, Jr. Phelps Dodge Corp. 100 shares, certificate #39787, in the name of Harriman & Co. "Your daughter Jean and your son, John Jr. are entirely free to do whatever they wish with the principal and income from these securities and I have no further interest in them or claim upon them. "Please sign at the bottom of this letter indicating your acceptance of this gift for them. "Affectionately, your father, "CEB/FJH (s) C. E. Briggs "ACCEPTANCE: (s) John H. Briggs (s) by J. W. Downing, atty. (s) John H. Briggs "WITNESS: (s) Charles Briggs Witness as to signature of John H. Briggs (s) Fred J. Hartman" These gifts by Charles E. Briggs, made in 1935 and 1936, were reported in gift tax returns filed by him for those years, respectively. On March 17, 1939, the petitioner executed two documents each designated a "Declaration of Trust". In each document it is stated that the petitioner, being possessed of certain securities and funds, a schedule of which as of March 1, 1939, was attached, "declare that I have held and do now hold the same as a trust estate in trust" for certain purposes. The property described in the attached schedule consisted of the *318 property which had been given to Jean Hamilton Briggs and to John Hamilton Briggs, Jr., by the petitioner and the petitioner's father, as evidenced by the letters hereinabove set forth, together with the income derived from the same, subject to certain purchases and sales made by the petitioner on behalf of each of his said minor children. The "Declaration of Trust" with respect to Jean Hamilton Briggs, inter alia, contained the following: "1. I am to hold the principal of the said trust estate in trust for my daughter, Jean Hamilton Briggs, upon the following terms: "(a) I shall use such part of the net income as may be in my judgment appropriate for the care, maintenance and education of my said daughter until she reaches the age of twenty-one (21) years, after which the entire net income shall be payable to her quarterly, or at other convenient intervals, as long as she shall live. During my daughter's minority, the balance of net income not utilized for her care, maintenance and education, shall in my discretion be retained and either added to principal or held for later distribution. In the event that at any time the net income of the trust estate in my judgment is insufficient *319 for the support, care, comfort, maintenance, advancement and education of my daughter, then such portion of the principal of the trust estate may be utilized for said purposes as I may deem necessary or proper. If she shall die leaving heirs of the body, such heirs shall be entitled, in equal proportions, to receive the entire principal and accumulated income, if any remains, at the time of her death. If she shall die without leaving heirs of the body, then the entire principal and accumulated income, if any remains, shall, at the time of her death, be distributed in accordance with the terms of her last will and testament, but if she dies intestate, or fails to dispose of said property by will, then the entire principal and accumulated income, if any remains, shall be distributed, at the time of her death, in accordance with the statutes of descent and distribution then operative in the State of Ohio. "(b) If my said daughter shall at any time hereafter alienate, charge, dispose of or encumber the income from, or principal of, any part of the trust estate hereby created, wholly or in part, before the same shall have been distributed to her, or, if by reason of insolvency or bankruptcy *320 or other event happening, the income from or principal of the trust estate, wholly or in part, shall cease to be enjoyed by my daughter or shall, or but for this proviso would, become vested in some other person or persons before the same shall have been distributed to my daughter under the provisions hereof, then the provisions hereinabove expressed in regard to the income and distribution of principal shall cease and determine. Thereafter said property shall be held in trust by the trustee, and until the death of my daughter the trustee may expend for, or pay to her or to the spouse, children or other relatives of my said daughter, such parts of the income and principal as the trustee, in his absolute and uncontrolled discretion, may deem fit and proper, with the right to retain and add to principal of the trust estate any portion not so expended, and at the death of my daughter any principal or accumulated income which may remain shall be paid to the heirs of her body, and if she shall die without leaving heirs of her body, shall be distributed in accordance with the statutes of descent and distribution then operative in the State of Ohio. "(c) The provisions of this Declaration *321 of Trust shall not be construed as in any way curtailing or otherwise affecting my obligation to support, maintain and educate my daughter." The "Declaration of Trust" with respect to John Hamilton Briggs, Jr., inter alia, contained the following: "1. I am to hold the principal of the trust estate and any accumulated income in trust for my son, John Hamilton Briggs, Jr., upon the following terms: "(a) I shall use such part of the net income as may be in my judgment appropriate for the care, maintenance and education of my said son until he becomes entitled to the principal of said trust estate as hereinafter provided. The balance of such income shall in my discretion be retained and either added to principal or heil for later distribution. In the event that at any time the net income of the trust estate in my judgment is insufficient for the support, care, comfort, maintenance, advancement and education of my son, then such portion of the principal of the trust estate may be utilized for said purposes as I may deem necessary or proper. "(b) At any time that I deem wise and proper after my said son reaches majority, and before he reaches the age of thirty-five (35), one-half *322 (1/2) of the principal amount of said trust estate shall be paid to him, together with one-half of the accumulated income, if any. The remaining half of the principal, together with any accumulated income thereon, shall be paid to him when he reaches the age of thirty-five (35) years. If he shall die leaving heirs of the body, such heirs shall be entitled, in equal proportions, to receive the share both of principal and income which would have been paid to my said son at the time when he, if living, would have been entitled to receive the same. If he shall die without leaving heirs of the body, the principal and accumulated income shall be distributed at the time of his death in accordance with the terms of his last will and testatment, but if he dies intestate or fails to dispose of said property by will, then said principal and accumulated income, if any, shall, at the time of his death, be distributed in accordance with the statutes of descent and distribution then operative in the State of Ohio. "(c) The provisions of this Declaration of Trust shall not be construed as in any way curtailing or otherwise affecting my obligation to support, maintain and educate my son." Subsequent *323 to the execution of the aforesaid "Declarations of Trust" and on December 8, 1939, the petitioner made a gift of $500 in cash to himself, in trust, for each of petitioner's said minor children. These gifts purported to be gifts to the trusts established by the Declarations of Trust dated March 17, 1939. In the gift tax return filed by the petitioner for the calendar year 1939, he reported the two $500 gifts to the trust and paid a gift tax in the amount of $15. The stock certificates representing the securities which had been given by the petitioner and his father, Charles E. Briggs, to the petitioner's two minor children were never transferred into the names of the children but were kept in the petitioner's name or street form. The cash gifts made by the petitioner to his minor children were deposited in the first instance in bank accounts in the names of the respective minors, with the petitioner and his wife, Mary S. Briggs, designated as trustees with authority to draw funds therefrom. Funds were thereafter withdrawn therefrom upon orders signed by the petitioner and were invested in securities. The certificates evidencing these securities were held in the name of the petitioner *324 or in street form and were dealt with in the same manner as the stock certificates given to the minors by the petitioner and his father. On December 13, 1938, the petitioner opened two accounts in his own name with the brokerage firm of E. A. Pierce & Co. In account numbered 67700 he deposited 1,000 shares of the capital stock of Eaton Manufacturing Company; 900 shares of the capital stock of Phelps Dodge Corporation; and $22,046.13 in cash which he had theretofore held for his minor daughter, Jean Hamilton Briggs. In account numbered 67701, he deposited 1,100 shares of the capital stock of Eaton Manufacturing Company; 900 shares of the capital of Phelps Dodge Corporation and $20,000.30 in cash which he had theretofore held for his minor son, John H. Briggs, Jr. No securities or cash other than the securities or cash held for his respective minor children were held in either of these accounts. The firm of E. A. Pierce & Co. was not notified that these accounts were opened and carried on behalf of the petitioner's minor children. On January 1, 1937, the petitioner opened books of account on behalf of said minor children in which he recorded all property which had been the subject *325 of gifts from the petitioner and his father, as hereinbefore set forth, as well as all other transactions carried on by the petitioner on their behalf from January 1, 1937 to December 31, 1939, inclusive. The transfers by the petitioner to his said minor children prior to March 17, 1939 were absolute gifts to them at the time of those transfers and were not gifts to the respective trusts executed by the petitioner on March 17, 1939 for the benefit of his minor children. The contested deficiency results from respondent's disallowance of two asserted exclusions of $4,000 each, from the 1939 gifts, and his disallowance of two exclusions of $5,000 each from both the 1937 and 1938 gifts, in computing net prior gifts for each of those years. [1] Respondent supports this action upon the premise that all the transfers to petitioner's minor children, prior to March 17, 1939, and detailed in the foregoing findings of fact, were gifts to the two trusts which were declared in writing on that day, so that no exclusions therefrom are permissible since such gifts were of future interest to the children beneficiaries of those trusts. The position of the respondent is that these trusts, though not *326 reduced to writing until March 17, 1939, had been created orally before the first transfer and that the latter writings merely confirmed their existence. The question is thus wholly factual and is resolved in favor of petitioner by our finding that these transfers, prior to March 17, 1939, were absolute gifts to the minor children and were not gifts to the respective trusts executed by petitioner on March 17, 1939, for the benefit of those children. The respondent's position rests upon a chain of circumstances running through the documentary evidence. From the letter of December 30, 1935, addressed to the petitioner by his father, he selects the paragraph reading "I strongly urge you, your family, and your brother and sisters to handle your financial affairs as a unit, giving each of you the advantage incident to a larger aggregate capital over smaller divided amounts." Reference is then made to the letter of petitioner's father of December 23, 1936, wherein the father states he is making a gift to petitioner's two minor children "through you as their natural guardian." The *327 respondent further points to each "Declaration of Trust" executed by the petitioner on March 17, 1939, wherein petitioner declares that he is holding certain securities and funds in trust for the respective minors; and to Schedule A of property attached thereto in which is listed the property transferred by gifts of himself and his father to the minor children in years prior to March 17, 1939. The respondent also urges as significant the fact that the stock certificates evidencing securities given both by the petitioner and his father were never transferred into the names of the children but were kept in petitioner's name or in street form. Furthermore, it is stressed that late in 1938, when the petitioner opened brokerage accounts in which the cash and securities previously given to the said minors were deposited, the accounts were carried in the petitioner's own name and the brokerage firm was not notified that the said accounts were opened and carried on behalf of the minors. Lastly, the respondent argues that considerable weight should be given to a statement in a letter dated September 25, 1942. This letter was written by the petitioner's secretary in response to an inquiry from *328 the respondent. It states, inter alia, that there was an oral understanding that the gifts made by the petitioner and his father were to form a nucleus of "trusts" of the character of the Declarations of Trust, dated March 17, 1939. When all these circumstances are weighed, the respondent maintains the conclusion is inescapable that it was the intent of the donor to create an oral trust of the character of the trusts dated March 17, 1939. The respondent, however, recognizes that the absence of any formal declaration of trust prior to March 17, 1939, poses a difficulty. We think it is one of the vulnerable links in the chain of circumstances relied upon by the respondent. The record contains no evidence concurrent with the making of the gifts indicative of an intent to transfer a qualified title to the property transferred. The Declarations of Trust dated March 17, 1939, furnish the first possible indication that the petitioner may have intended to make gifts in trust. We do not think the statement in those trusts that the petitioner was holding certain property in trust for his children can have the legal effect of changing an absolute title to a qualified one. James T. Pettus, 45 B.T.A. 855. *329 The children, although minors, were capable of taking the property as donees under the rule prevailing in Ohio. Emil Frank, 27 B.T.A. 1158, 1164. Because of their infancy the said children could not take actual possession of the property. The petitioner as natural guardian became custodian of the property in a fiduciary capacity. The fact that the petitioner dealt with the property through brokerage accounts carried in his own name is of little significance. That the petitioner chose to deal thus with the children's property seems to us to furnish a logical reason for the Declarations of Trust. They were executed shortly after the opening of the brokerage accounts. Possibly, to avoid any further complications, the petitioner may have regarded it as most desirable to evidence the fact that he was holding the property of the children as legal custodian. Petitioner may also have thought it necessary and proper to invest himself with the unlimited powers set forth in those instruments to enable him to handle the accounts in the manner he desired. Whatever the motive may have been it is without legal force if the purpose in making the Declarations of Trust *330 was an attempt to change the absolute legal title that had been previously vested in the children, into a qualified title. The legal rights of the children, as evidenced by the unqualified gifts, were clearly enforceable in the courts. Emil Frank, supra. The gifts made by the petitioner's father to the children were without any limitation or restriction. The gifts of the petitioner, as evidenced by his letters, were equally unrestricted. When the transactions are viewed in their proper perspective, we think the Declarations of Trust are consistent with an intent to vest absolute title to all property transferred to the children prior to the execution of the trusts. Surely, the petitioner would have no legal right to change the character of the gifts made to the children by his father. Yet this is just what Schedule "A" seemingly purports to do. Since he has thus commingled the separate gifts, we think it logical to find that the gifts petitioner had made were unqualified and absolute just as were those made by his father. We do not understand that petitioner is contending otherwise. His conduct, as shown by the book entries, the gift tax returns and *331 the income tax returns showing the income to be that of the children, indicates that the petitioner regarded his minor children as the absolute owners of the property transferred by gift prior to the execution of the Declarations of Trust on March 17, 1939. We have therefore found that the transfers made by the petitioner prior to March 17, 1939 were absolute gifts and vested immediate title to the corpus and income in the petitioner's minor children. Upon that finding we conclude, as respondent admits we must, that the petitioner was entitled to exclusions of $5,000 on the gifts made in 1937 and 1938 to each respective child; and that on the gifts of $4,000 made to each child on January 12, 1939, the petitioner was entitled to an exclusion of $4,000. What has been said respecting the gifts made by the petitioner to his children prior to March 17, 1939 does not control the two gifts of $500 stipulated to have been made by the petitioner on December 8, 1939 to the trusts. But in view of our controlling finding to which reference has been made above, it is immaterial here whether either or both of these gifts were of present or future interests. The petitioner has already claimed, *332 in effect, and should be allowed the maximum exclusion of $4,000 from his 1939 gifts to each of his two minor children. In computing the gift tax liability of the petitioner for the calendar year 1939, the respondent erroneously disallowed the exclusions of $10,000 with respect to the gifts to the children prior to March 17, 1939.[2]The respondent also erred in disallowing the exclusion of $4,000 on the absolute gifts to each child on January 12, 1939. [3]The petitioner has paid the proper gift tax on the $500 transferred to each trust on December 8, 1939. There is no deficiency in gift taxes for the calendar year 1939. Decision will be entered for the petitioner. Footnotes
1. Sec. 504 (b) Rev. Act of 1932 as amended by Sec. 505 (a) Rev. Act of 1938; Sec. 1003 (b)(1) I.R.C.↩
2. I.R.C., Sec. 1003 (b) (1)↩; Rev. Act of 1932, sec. 504 (b); Rev. Act of 1938, sec. 505 (b). 3. I.R.C., Sec. 1003 (b) (2)↩, as amended by sec. 454, Rev. Act of 1942.